IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Stacy Diane S.,[1]**

       **Plaintiff,**

**v.**                                                                              **Case No. 22-4071-JWL**

**Kilolo Kijakazi,
Acting Commissioner of Social Security,**

       **Defendant.**

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court orders that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**I.      Procedural History**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on September 11, 2018. After exhausting administrative remedies before the Social Security Administration (SSA), plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred by finding

---

[1] Because the court makes its opinions available online, it captions this case using only the first initial of plaintiff's last name to protect her privacy interest.

at step three that plaintiff's mental impairments did not meet or medically equal the requirements of Listings 12.04 and/or 12.06 and by failing to appropriately evaluate plaintiff's subjective complaints of pain related to her fibromyalgia in determining plaintiff's RFC.

## II.     Standard for Judicial Review

The court's review is guided by the Act. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *accord White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Wall*, 561 F.3d at 1052; *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005); *see also Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994)

(The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in *Bowling*)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett*, 862 F.2d at 804-05; *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Williams*, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process.  *Id*.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. *Wilson*, 602 F.3d at 1139 (quoting

*Lax*, 489 F.3d at 1084). In steps one through four the burden is on plaintiff to prove a disability that prevents performance of past relevant work. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006); *accord Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001); *Williams*, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. *Id.*; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

In this case, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since September 10, 2018. He determined at step two that plaintiff had the following severe impairments: fibromyalgia with irritable bowel syndrome, generalized anxiety disorder, major depressive disorder, cannabis use disorder, and degenerative disc disease of the cervical spine. At step three, the ALJ found that plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. In connection with step four of the sequential evaluation process, the ALJ determined that plaintiff had the RFC to perform a range of light work. Specifically, the ALJ found that plaintiff

> can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally crawl and occasionally reach overhead bilaterally. She can frequently handle and finger bilaterally. She can tolerate occasional exposure to extreme cold and excessive vibration. She must avoid all unusual hazards—defined in SSR 96-9p as "moving mechanical parts of equipment, tools or machinery; electrical shock; working in high exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." She is able to apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine, repetitive tasks; in a work environment free of fast-paced production requirements; involving only simple work-related decisions; and with few, if any, workplace changes. She can tolerate frequent interaction with the public, coworkers and supervisors.

4

The ALJ determined at step four that plaintiff was unable to perform any past relevant work. After considering plaintiff's age, education, work experience, and RFC, he determined at step five that there were jobs existing in significant numbers in the national economy that plaintiff could perform. Thus, the ALJ concluded that plaintiff had not been under a disability from September 10, 2018 through the date of his decision.

## III. Discussion

Plaintiff first challenges the ALJ's step-three finding and, specifically, alleges that the ALJ erred in finding that the severity of plaintiff's mental impairments do not meet or medically equal the criteria of listings 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders). With respect to the paragraph B criteria, the ALJ found that the medical evidence in the record was not consistent with a finding that plaintiff had a marked or extreme limitation in any of the four broad mental functional areas used by the agency to assess mental impairment: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Rather, the ALJ found that plaintiff had a moderate limitation in each of these areas caused by her mental impairments. Substantial evidence in the record supports this conclusion.[2]

---

[2] With respect to the paragraph C criteria, the ALJ found that the evidence in the record did not establish that plaintiff has a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life. While it is clear from her brief that plaintiff disagrees with this finding, she has not directed the court to any error that the ALJ allegedly made in reaching that finding. Moreover, substantial evidence in the record supports the ALJ's determinations on the paragraph C criteria, including the same evidence that supports the ALJ's determination regarding the paragraph B criteria as described in this opinion.

In this case, the ALJ discussed in detail the medical evidence as it pertains to plaintiff's allegations of severe mental impairments. He began by acknowledging that mental status examinations "have noted anxious/depressed moods, and at times tearfulness, excessive speech, or agitated behavior." But the ALJ emphasized that those mental status examinations consistently reflected that plaintiff's attention, concentration and memory are intact. The ALJ further noted that the record did not reflect any problems in functioning socially when seeking treatment—nothing indicated that plaintiff had problems waiting in public areas, behaved inappropriately with office staff, or was unable to form a therapeutic rapport with treatment providers. In connection with his assessment of plaintiff's RFC, the ALJ made additional findings with respect to plaintiff's mental impairments and he ultimately concluded that the record failed to support plaintiff's allegations of disabling psychiatric symptoms. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005) (explaining that although the Circuit requires an ALJ to discuss the evidence and explain the ALJ's step-three finding that a claimant is not disabled, an ALJ's failure to do so at step three is harmless if findings made elsewhere in the ALJ's decision confirm the step three determination under review).

In so finding, the ALJ recognized that the medical evidence reflected a history of treatment for major depressive disorder, generalized anxiety disorder and cannabis use disorder. But he found little evidence to support the severity and degree of limitation asserted by plaintiff. As noted by the ALJ, treatment records reflect that plaintiff reported a substantial improvement in symptoms with sustained treatment and that plaintiff frequently reported mild or no symptoms at her visits. The ALJ also noted that plaintiff's mental status examinations did not reveal any serious chronic cognitive deficits or evidence of serious difficulty interacting or communicating

6

with others.  He highlighted that the record did not reflect any episodes or exacerbations requiring inpatient care or acute physician intervention, suggesting that plaintiff's symptoms are not overwhelming or unmanageable.  Taken as a whole, and as explained by the ALJ, plaintiff's treatment records indicated that plaintiff's symptoms are generally well managed absent situational stressors such as her father's recent cancer diagnosis.

The ALJ, then, supported his finding that plaintiff had "moderate limitation" in each of the paragraph B criteria by citing substantial evidence from the administrative record, including plaintiff's medical records.  Although plaintiff cites other evidence that she contends supports a finding that she has more limitations than the ALJ determined, the court here cannot "reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and internal quotation marks omitted).  As the Circuit has noted, the "'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Id.* (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  In sum, the court concludes that substantial evidence supports the ALJ's finding that plaintiff's mental impairments did not meet or medically equal a Listing for mental impairments and the court discerns no error in the ALJ's analysis.

Plaintiff's final argument is that the ALJ failed to appropriately evaluate plaintiff's subjective complaints of pain related to her fibromyalgia in determining plaintiff's RFC.  The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Thompson*, 987 F.2d at 1488 (citations and quotation omitted). In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. *Luna*, 834 F.2d at 165-66; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Thompson*, 987 F.2d at 1489).[3] In addition, the Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon

---

[3] *Luna*, *Thompson*, and *Kepler* were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in *Luna* based on 20 C.F.R. § 404.1529 (2017) is still the proper standard.

the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

With respect to plaintiff's subjective complaints of pain, the ALJ noted that plaintiff testified that she "aches everywhere," "has a hard time using her arms," "cannot stand for more than 10 minutes at a time, sit more than 5 minutes before getting up, walk about the length of her driveway, and lift a gallon of milk." But while the ALJ found that plaintiff "may indeed have some back and joint pain due to fibromyalgia," the record as a whole did not support a finding that plaintiff's pain was disabling. The ALJ first analyzed the medical evidence and determined that objective findings in the record were not consistent with the severity and degree of the pain alleged by plaintiff. The ALJ, for example, highlighted that the record contained no imaging of the lumbar spine and that an MRI of the cervical spine showed only mild degenerative changes, without spinal cord compression or significant neural foraminal narrowing. Despite her allegations of extreme pain, physical examinations analyzed by the ALJ showed "good strength and range of motion and no neurological deficits." Looking to the results of a consultative exam, the ALJ further noted that plaintiff did not present with any chronic motor, sensory, strength or reflex deficits; was found to have good range of motion of the cervical region; and had a normal gait without an assistive device. Other exams similarly showed the absence of significant weakness, loss of range of motion in the neck or other joints, or gait abnormality "reasonably

consistent with the extreme limitations the claimant asserts." In sum, the ALJ described the clinical findings related to plaintiff's pain as "unremarkable."

In addition to analyzing the medical evidence, the ALJ assessed plaintiff's treatment of her pain and found that plaintiff's "very limited and conservative" treatment was inconsistent with her subjective extreme complaints of pain. At the hearing, plaintiff testified that she was not taking any medication for chronic pain and had not consistently taken medication for her pain. While plaintiff highlights that she reports a low tolerance for pain medication, this assertion does not undercut the ALJ's conclusion, in light of the evidence as a whole, that plaintiff's limited and conservative treatment belied the severity of the pain alleged. *See J.D.C. v. Kijakazi*, 2023 WL 6248971, at \*4 (D. Colo. Sept. 25, 2023) (ALJ's RFC determination was supported by substantial evidence despite plaintiff's subjective complaints detailing his inability to concentrate due to his difficulty sleeping, prescribed pain medication, and low tolerance for narcotics). Moreover, as emphasized by the ALJ, plaintiff had not received any injections since 2019 and there was no record of extensive physical therapy or exercise for fibromyalgia despite urging from her doctors to increase her exercise and activity.

The burden to prove disability is on plaintiff. Despite her suggestions to the contrary, neither a diagnosis of fibromyalgia nor her subjective complaints of pain are sufficient to establish disability. *See Madrid v. Astrue*, 243 Fed. Appx. 387, 392 (10th Cir. 2007) ("Our case law makes clear that a diagnosis of a condition does not establish disability."); 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). Here, the ALJ explained his rationale and the inconsistencies in the record he relied upon to discount plaintiff's allegations of disabling pain from fibromyalgia. The court's review of the

ALJ's consideration is deferential and plaintiff does not point to evidence compelling a contrary finding. As is almost always the case in a Social Security decision, the evidence is equivocal and can be read to support a finding of disability or of non-disability. It is the ALJ's duty to consider all the evidence and decide the issue. If the ALJ's rationale is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), the court may not reweigh the evidence and substitute its judgment for that of the ALJ.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

**IT IS SO ORDERED.**

Dated this 24th day of October, 2023, at Kansas City, Kansas.

                                        s/John W. Lungstrum
                                    HON. JOHN W. LUNGSTRUM
                                    United States District Judge